IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Norfolk Division



FILED
APR 1 2 2010
CLERK, U.S. DISTRICT COURT
NORFOLK, VA

**FELICIA D. TENNESSEE**
13025 Old Belfield Road
Capron, Virginia 23829

PLAINTIFF,

v.

**MURPHY- BROWN, L.L.C.,**

**DEFENDANT.**

Serve: CT Corporation Systems
Registered Agent
Murphy – Brown, L.L.C.
4701 Cox Road, Ste. 301
Glen Allen, Virginia 23060

CIVIL ACTION NO.

2: 10cv167

PLAINTIFF DEMANDS
TRIAL BY JURY

## COMPLAINT

COMES NOW Plaintiff FELICIA D. TENNESSEE ("Plaintiff"), by counsel, and for her Complaint against Defendant, MURPHY-BROWN L.L.C. ("Defendant") of the City of Waverly, Virginia, states as follows:

### NATURE OF THE CLAIMS

This is an action for declaratory relief, compensatory damages, and other appropriate relief, legal and equitable brought by Plaintiff to redress Defendant's unlawful employment practices of sex discrimination, sexual harassment, and retaliation in violation of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e *et seq.* as amended, (Supp. II. 1991) ("Title VII").

## JURISDICTION AND VENUE

1. This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 1331 and 1343 because this action involves federal questions regarding the deprivation of Plaintiff's rights under federal civil rights laws.

2. Venue is proper in this district pursuant to § 2000e-(5)(f)(3), because the unlawful employment practices occurred in this district, the relevant employment records are maintained and administered in this district, and pursuant to 28 U.S.C. § 1391(b), Defendant is located in this district.

## PARTIES

3. Plaintiff is an African American female citizen of the United States of America and at all times relevant to this cause of action, was a resident of Capron, Virginia and an employee of Defendant Murphy-Brown, L.L.C.

4. Defendant, at all times relevant to this cause of action, has been organized and existing under the laws of the Commonwealth of Virginia, and qualified to do business in the Eastern District of Virginia.

5. Defendant is an "employer" within the meaning of sections 703(a) and 704(a) of Title VII in that it employed more than the requisite number of persons for duration under Title VII.

## PROCEDURAL REQUIREMENTS

6. Plaintiff filed a timely charge of sex discrimination, sexual harassment, and retaliation, against Defendant with the United States Equal Employment Opportunity Commission ("EEOC"), and received her Notice of Right to Sue within Ninety (90) days of filing this action.

## FACTUAL ALLEGATIONS

7. Plaintiff began working for Defendant on or about August 11, 1997.

8. Defendant owns and operates hog farms. On several of Defendant's farms, Plaintiff worked in the farrowing room where the hogs are brought to deliver their sows after successful breeding in another area of the farm.

9. Plaintiff's duties included handling the deliveries, maintaining the health of the hogs and their sows, and processing the sows to the nursery to await transfer for market sale.

10. Plaintiff obtained high job performance evaluations throughout her employment. She received certificates of recognition, bonuses for high quality work, and promotions. In 2003, Defendant put Plaintiff in charge of the farrowing room where she worked with one other female employee, Bridgett Edwards.

11. Between 2003 and the time of the event, Defendant began hiring a number of Hispanic males to work on the hog farms. These employees included, but were not limited to, Umberto Santiago, Miguel Vazquez, Salvador Hernandez, Jose Rodriquez, Ignacio Rosario, Miquel Navarro, and Leonardo (Talon) Rodriquez.

12. On or about October 30, 2003, Ignacio Rosario rubbed Plaintiff's arms, told her he loved her and wanted her body. Plaintiff told him to stop and reported the incident to her immediate supervisor. The management took no disciplinary action against this employee. The sexual harassment against Plaintiff persisted.

13. Also in 2003, Umberto Santiago and Ignacio Rosario began showing a sex book to Plaintiff. The book was written in Spanish and English. It contained graphically detailed pictures of male and female genitalia. Plaintiff reported this incident to her

supervisor. Although the book later disappeared, Defendant took no disciplinary action against the employees and the sexual harassment against Plaintiff persisted.

14. Soon thereafter, Plaintiff learned that one of the workers had been caught masturbating in a woman's panties on a nearby farm. Some of the male workers on the farm where Plaintiff worked laughed and talked about the incident in Plaintiff's presence. Management was informed, but, took no disciplinary action against these employees. The sexual harassment against Plaintiff persisted.

15. On the table in the lunchroom, a drawing of male and female sex organs was discovered scratched into the table. Plaintiff reported the picture to her supervisor. While the scratched image was cleared from the table, the same picture was drawn on one of the sow processing cards which accompanied the hogs from the breeding room, where Miquel Navarro and Leonoardo Talon worked, to the farrowing room where the two female employees, Plaintiff and Bridget Edwards, worked. Plaintiff informed her supervisor, but no disciplinary action or investigation took place. The sexual harassment against Plaintiff persisted.

16. Plaintiff's co-workers spoke very little English. The other female employee who worked with Plaintiff in the farrowing room spoke some Spanish and indicated to Plaintiff that the male employees were describing female body parts and pointing to Plaintiff. About this time, Jose Rodriquez began calling Plaintiff "sexy." Plaintiff told him not to talk to her in that way.

17. In December 2007, in violation of Defendant's policy, Miquel Navarro brought a digital camera to work and took a picture of Bridget Edwards against her wishes. Plaintiff informed Miquel that employees were not allowed to have cameras on the job.

Plaintiff, thereafter, observed the men grouped together and talking among themselves while pointing at her and gesturing towards her. Plaintiff was intimidated by their gesturing. Even though she informed her supervisor about the gestures and her feelings of intimidation, the management took no disciplinary action against these employees. The sexual harassment against Plaintiff persisted.

18. On or about January 23, 2008, Jose while sitting in the lunchroom with the women, began rubbing Bridgett Edwards' arm and touching her shoulder in Plaintiff's presence. Plaintiff reported Jose's conduct to her supervisor. The management took no disciplinary action against Jose. The sexual harassment against Plaintiff persisted.

19. Plaintiff's immediate supervisor reported to her that the male employees were complaining about her. Shortly thereafter, Plaintiff's work boots were removed from where she usual kept them and hidden from her. Later, Plaintiff found her boots in the trash. Someone also tore up Plaintiff's certificate of recognition and award. The management never investigated the source of this conduct. Therefore, no disciplinary action was taken and the sexual harassment against Plaintiff persisted.

20. For the two female employees who worked in the farrowing room, defendant required that they shower before entering the farrowing room and shower once they had completed their duties for the day. At all relevant times, Plaintiff and Bridgett Edwards were the only females in the farrowing room. They underwent the shower routine on a daily basis.

21. On or about January 24, 2008, Plaintiff and her female co-worker, Bridgett Edwards entered the women's shower room to shower before leaving for the day. Due to the cold outdoor temperature, Plaintiff decided after entering the shower room to forego

the shower and just wash her hands. When she opened the door to the shower room to exit into the area where the sinks were located, she encountered Salvatore Hernandez kneeling against the shower door. Surprised by the door opening, Salvatore fell into the women's shower room. Upon seeing Plaintiff standing in front of him, Salvatore jumped up and ran out of the area.

Salvatore jumped up and ran out of the area. Plaintiff upon examining the door saw three peepholes, two of which were drilled at the doorknob level and the other higher up on the door.

22. Plaintiff examined the door and found three drilled holes in the door, two at the level of the doorknob and one hole at eye level on the door.

23. Plaintiff called her immediate supervisor Honor Lee Flournoy as soon as she got home since it was at the end of the workday. When Plaintiff returned to work, Ms. Flournoy informed her that she would have the holes patched up, but would not remove the door.

24. Later that week Lori Brooks from Human Resources called Plaintiff into her office to offer her a raise. Ms. Brooks never mentioned anything about the holes drilled in the women's shower door. When Plaintiff later asked Ms Flournoy, what the employer planned to do about the women's shower door and the employees who had peeped at the women through the drilled holes, Ms. Flournoy replied that she had done all she could do. She did not plan to fire Salvatore or any of the other male employees who might be involved because that would leave the farm short-handed.

25. When Plaintiff informed the production manager Lewis Epps, who was Ms. Flournoy's supervisor, about the incident and her fear of working alone in her area and

taking showers, Mr. Epps laughed about the holes in the women's shower door and proposed that perhaps the women had drilled the holes in the door themselves. Short of patching the holes, the management took no other action and failed to investigate the matter. Nor were any of the employees disciplined for their actions.

26. Salvatore continued to work on the farm in his same area as did any other male employees who may have participated in peeking into the women's shower room with him. Management never investigated to see who was involved. No one was disciplined.

27. When Plaintiff continued to describe her humiliation and her fear of working among the male employees, management informed Plaintiff it was going to transfer Plaintiff and her co-worker Bridget Edwards to another farm. Plaintiff was told to report to the new farm on February 1, 2008, a farm, which Plaintiff, upon information and belief, knew the male employees participated in the same type of sexual harassing behavior as she had experienced in her present location.

28. Plaintiff has been under the care of physicians since the shower door incident for anxiety attacks, depression and stress.

29. Salvatore Rodriquez was later arrested, fined and sentenced for his criminal behavior of peeping at the women through the drilled holes in the women's shower room. His arrest occurred because Plaintiff reported his crime to the police department. Only after Salvatore was charged and sentenced, did Defendant terminate him.

### COUNT I
### (Sexual Harassment in violation of Title VII).

30. Plaintiff herein restates and re-alleges by reference each and every allegation in ¶¶ 1-29 as if set forth fully herein.

31. Defendant has discriminated against Plaintiff on the basis of her gender in violation of Title VII by allowing continual sexual harassment of Plaintiff by her male co-workers thereby creating a sexually hostile environment.

32. Defendant has discriminated against Plaintiff on the basis of her gender in violation of 42 U.S.C. § 1981 by fostering, accepting, ratifying and/or failing to prevent a sexually hostile work environment that included among other things, severe and pervasive sexual harassment of Plaintiff by her male co-workers.

33. Defendant has discriminated against Plaintiff on the basis of her gender in violation of 42 U.S.C. § 1981 by engaging in, tolerating or failing to prevent the sexual harassment as alleged above and by failing to take adequate affirmative action to correct and redress the unlawful employment practices perpetrated against the Plaintiff.

34. Plaintiff believes and avers that the effect of Defendant's sexual harassment and unlawful employment practices against her has been to limit, classify and discriminate against her in ways that jeopardize and tend to deprive her of the equal employment opportunities in violation of 42 U.S.C. § 1981.

35. Plaintiff is now suffering and will continue to suffer irreparable injury from this unlawful discrimination.

36. Defendant is liable for the sexual harassment and unlawful employment practices against Plaintiff because even though Plaintiff informed Defendant about the sexual harassment, Defendant did not *respond with remedial action reasonably calculated to end the harassment. Equal Employment Opportunity Commission v. Central Wholesalers, Inc.*, 573.3d 167, 177 (4th Cir.2009).

37. As a direct and proximate result of Defendant's discriminatory conduct in violation of § 1981, Plaintiff has suffered, and continues to suffer monetary and/or economic harm, including, but, not limited to, loss of past and future income, compensation and benefits for which she is entitled to an award of damages and other relief.

38. As a direct and proximate result of Defendant's discriminatory conduct in violation of 42 U.S.C. § 1981, Plaintiff has suffered, and continues to suffer severe mental anguish and emotional distress, including but not limited to depression, humiliation, embarrassment, stress and anxiety, loss of self-esteem and self confidence, and emotional pain and suffering for which she is entitled to an award of damages.

## COUNT II

### (Sexual Discrimination and Retaliation in Violation of Title VII)

39. Plaintiff herein restates and re-alleges by reference each and every allegation in ¶¶ 1-38, as if set forth fully herein.

40. Defendant has discriminated and retaliated against Plaintiff on the basis of her gender in violation of Title VII by denying her a hostile free work environment free of unlawful discrimination and harassment. When Defendant was put on notice of the male workers' unwelcome sexual acts and invasion of Plaintiff's privacy by watching her and another female co-worker in the shower room, Defendant's informed Plaintiff that she and her female co-worker were to be transferred to another farm instead of disciplining the perpetrators for their harassment.

41. Plaintiff had never worked on the farm to which she was being transferred. Upon information and belief, Plaintiff was aware of ongoing unlawful sexual conduct at

this new assignment. In essence, Plaintiff was being transferred from one hostile work environment to another while the perpetrators remained undisciplined, and employed in the same area of their present employment.

42. As a direct and proximate result of Defendant's discriminatory conduct in violation of Title VII, Plaintiff has suffered, and continues to suffer monetary and/or economic harm, including, but, not limited to, loss of past and future income, compensation and benefits for which she is entitled to an award of damages and other relief.

43. As a direct and proximate result of Defendant's discriminatory conduct in violation of Title VII, Plaintiff has suffered, and continues to suffer severe mental anguish and emotional distress, including but not limited to depression, humiliation, embarrassment, stress and anxiety, loss of self-esteem and self confidence, and emotional pain and suffering for which she is entitled to an award of damages.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff prays this Court enter judgment for Plaintiff and against Defendant, and order the following relief:

A. A declaratory judgment that the actions, conduct and practices of Defendant complained of herein violate the laws of the United States.

B. An order directing Defendant to place Plaintiff in the position she would have occupied but for Defendant's discriminatory treatment and unlawful conduct, including, but not limited to: (1) reinstatement of job status and rank; (2) affirming and updating of all Plaintiff's certifications; and (3) ensuring that the effects of Defendant's employment practices do not continue to affect Plaintiff's employment and personal life.

C. An award of damages of Five Hundred Thousand Dollars ($500,000.00) plus prejudgment interest, to compensate Plaintiff for harm to her professional and personal reputations and loss of career fulfillment, mental anguish, humiliation, embarrassment, stress, anxiety, emotional pain and suffering, emotional distress, and all monetary and/or non-monetary losses suffered by Plaintiff.

D. An award of costs and expenses incurred by Plaintiff in this action, and Plaintiff's attorneys' fees to the fullest extent permitted by law this action.

E. Such other and further relief to Plaintiff as the Court deems just and proper.

Respectfully submitted,
FELICIA D. TENNESSEE

By *[signature]*
Counsel

Henry L. Marsh, III, VSB No. 05691
Frederick H. Marsh, VSB No. 40133
Hill, Tucker & Marsh
422 E. Franklin Street, Suite 301
Richmond, VA, 23219-2226
Phone (804) 648-9073
Facsimile (804) 648-2116